## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-1573** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **THE BOROUGH OF CARLISLE and** | : | |
| **DAVID J. ROGERS, individually and as** | : | |
| **a police officer for the Carlisle Borough** | : | |
| **Police Department,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court are Plaintiff's and Defendants' cross motions for summary judgment. (Doc. Nos. 23, 26/37.[1]) The motions have been briefed by both parties and are ripe for disposition.

## I. BACKGROUND

On May 24, 2007, in Carlisle, Pennsylvania, Plaintiff Brian Kelly was riding as a passenger in his friend, Tyler Shopp's, truck. (Doc. No. 24 ¶ 1.) Defendant David Rogers, a police officer for the Carlisle Police Department, observed Shopp speeding, and operating a vehicle that appeared to be in violation of an ordinance regulating vehicle bumper height. (Doc. No. 27 ¶ 2.) Rogers initiated a traffic stop. (Doc. No. 27 ¶ 2.) Kelly, who was carrying a hand-held video camera, turned on the camera and began to record Defendant Rogers. (Doc. No. 27 ¶¶

---

[1]Document number 16 has been docketed as Plaintiff's motion for partial summary judgment, however there appears to have been an error and the document uploaded is the statement of material facts, identical to document number 27, which is correctly labeled statement of material facts. Plaintiff has re-filed the motion for summary judgment appearing now as document number 37.

3-4.) It is disputed whether the camera was in plain view or was covered by Plaintiff's hands. (Doc. No. 24 ¶ 3; Doc. No. 27 ¶ 5.) Rogers asked Shopp for his licence, registration, and insurance card, and before returning to his vehicle to process the information and write out a speeding citation, Rogers informed Shopp and Kelly that he was routinely recording the traffic stop. (Doc. No. 27 ¶ 6.) Upon returning to Shopp's vehicle with the citation, Officer Rogers noticed for the first time that Kelly was also recording the incident by video tape. (Doc. No. 24 ¶ 11.) Officer Rogers demanded that Kelly relinquish the video camera, and Kelly complied. (Doc. No. 27 ¶¶ 7-8.)

Officer Rogers returned to his patrol car with the camera and spent several minutes there while he called the District Attorney's office to determine whether Kelly had violated the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"). (Doc. No. 24 ¶ 13.) Officer Rogers told Assistant District Attorney ("ADA") John Birbeck that "he had pulled over a truck for a traffic violation and that the passenger in the truck had been secretly and nonconsensually recording [him]." (Doc. No. 24 ¶ 15.) It is disputed whether Officer Rogers informed Birbeck that he, too, had been recording the traffic stop. (Doc. No. 27 ¶ 13; Doc. No. 33, at 3.) Birbeck gave Officer Rogers his approval to charge Kelly with violation of the Wiretap Act, prompting Officer Rogers, with the assistance of back-up officers, to order Kelly out of the car and to arrest him. (Doc. No. 24 ¶ 23; Doc. No. 27 ¶ 19.) In the process of handcuffing and transporting Kelly to a patrol car, Officer Rogers "bumped" Kelly, causing staples from a previous rugby injury to tear open. (Doc. No. 24 ¶ 19; Doc. No. 27 ¶¶ 20-21.) Kelly's shin bled. (Doc. No. 24 ¶ 19.) Kelly had told Rogers that he could not get into the car on his own because of the knee injury but did not make any other complaints of pain. (Doc. No. 24, Ex. A, at 8-10.)

At Kelly's booking and arraignment, Rogers recommended that Kelly be released on his own recognizance, but the Judge required bail. (Doc. No. 24 ¶ 20.) Kelly, unable to make bail, spent the night in prison, where he received medical treatment for his shin before being released the next day. (Doc. No. 27 ¶¶ 27, 28.) A Magisterial District Judge approved Officer Rogers' Criminal Complaint and Affidavit of Probable Cause, however, Cumberland County District Attorney David Freed dropped the charges against Kelly before any further proceedings occurred. (Doc. No. 24 ¶ 21.)

Kelly now brings this action based upon 42 U.S.C. § 1983 and state law claims of assault, battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress ("IIED"). He seeks an injunction from further such arrests and damages. Plaintiff Kelly seeks summary judgment on the grounds that probable cause did not exist to make the arrest, whereas Defendants Rogers and the Borough of Carlisle (collectively "Defendants") seek dismissal of nearly all claims on the basis that probable cause existed to make the arrest and, in the alternative, qualified immunity.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary

judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III. DISCUSSION**

Plaintiff brings suit against Officer Rogers in his individual and official capacities. Claims against an officer in his official capacity are equivalent to claims against the over-arching entity itself, and are therefore subject to the same defenses. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Defendant Rogers suggests that claims against him in his individual capacity should be dismissed, even if he did not have probable cause to arrest Plaintiff Kelly, due to qualified immunity. The Borough of Carlisle argues that the claims against it should be dismissed because Plaintiff cannot show a policy or custom of deliberate indifference as required by Monell. The Court begins with these defenses.

**A. Qualified Immunity**

First, the Court will address the qualified immunity defense, which would release Officer Rogers from liability in his personal capacity. The Supreme Court has held that "where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). Preferably, qualified immunity determinations are made at the summary judgment stage to allow entitled officers the benefit of immunity from suit as well as liability. Carswell v. Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004). Qualified immunity is a question of law for the Court and requires the Court to ask two questions: whether, when considering the facts in the light most favorable to the plaintiff, the officer's conduct violated a constitutional right, and whether the constitutional right at issue was clearly established at the time of the arrest. Pearson v. Callahan, No. 07-751, 2009 WL 128768, at *6 (U.S. Jan. 21, 2009); Saucier, 533 U.S. at 200-02; Gilles v. Davis, 427 F.3d 197, 205 (3d

Cir. 2005).

Nonetheless, a court's decision does not turn exclusively on these two inquiries, "[o]nce these requirements are found to have been satisfied, the inquiry proceeds to another, closely related issue, that is, whether the officer made a reasonable mistake as to what the law requires." Carswell, 381 F.3d 235 (3d Cir. 2004); see also, Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008) ("The second prong of the qualified immunity analysis is focused upon whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Qualified immunity determinations should take into account the entire episode and allow for cases where officers "reasonably but mistakenly conclude that probable cause to make an arrest is present . . . . [I]n such cases, those officers . . . will not be held personally liable." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). Thus, "the qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. at 483; Carswell, 381 F.3d 235.

### 1. Qualified Immunity for False Arrest, False Imprisonment, and Malicious Prosecution

The Supreme Court recently determined that the two prongs of the qualified immunity inquiry may be taken up in either order, at the discretion of the trial court judge. Pearson, 129 S.Ct. at 821 (withdrawing from the Saucier mandate that required the constitutional violation to be discussed before the issue of whether the right was clearly established). Because in this case there are serious contentions as to whether probable cause was established at the time of arrest, and therefore whether a constitutional violation occurred, the Court begins with the question of whether, "on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken," Officer Rogers was on notice that his

conduct in arresting Plaintiff Kelly was unlawful. Pearson, 129 S.Ct. at 822 (internal citations omitted). In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Saucier, 533 U.S. at 201. It is true that "the right to be free from arrest except on probable cause was clearly established at the time of [Plaintiff's] arrest." Orsatti, 71 F.3d at 483. However, as the Third Circuit counseled in Carswell, Orsatti, and Gilles, the inquiry does not end here because the analysis for qualified immunity is distinct from establishment of a constitutional violation. Carswell, 381 F.3d at 242; Saucier, 533 U.S. at 206 ("[E]ven if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions."); Orsatti, 71 F.3d at 483; Gilles, 427 F.3d at 206-07.

In this case, Defendant acted as reasonably as could be expected. He observed Kelly videotaping the police stop without his permission. Then, he followed police policy in calling the ADA to confirm that there was probable cause to make an arrest under the Wiretap Act. Based upon Officer Rogers' experience—that he has a legal obligation to disclose to Shopp and Kelly any recording he makes so as to avoid violating the Wiretap Act—the ADA's advice was reasonable, so Defendant proceeded with the arrest. The Court agrees that any reasonable officer in Defendant's situation would have likewise relied on the advice given by the ADA.

The actual terms of the Wiretap Act are that "intentional interception" of "oral communications," defined in the statute as communications "uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation" are prohibited. 18 Pa. Const. Stat. Ann. § 5702. When viewing the

facts in the light most favorable to Plaintiff, as we must in the qualified immunity assessment, Defendant knew he was being videotaped the entire time and therefore had no reasonable expectation of privacy in the traffic stop. For this reason, ADA Birbeck's advice that probable cause existed for the arrest may have been incorrect. Nonetheless, the Court finds that Defendant made good-faith reliance on this outside legal assessment of the situation, and therefore is entitled to qualified immunity.

The Third Circuit has not explicitly ruled on the issue of whether good faith reliance on an ADA's legal advice makes police conduct reasonable, but it has accepted the well-established defense for searches conducted pursuant to good-faith reliance on a warrant approved by a neutral magistrate. United States v. Leon, 468 U.S. 897 (1984). Further, the Supreme Court has adopted the Leon reasoning to qualified immunity cases. See e.g., Malley v. Briggs, 475 U.S. 335, 344-45 (1986) ("[W]e hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in Leon, *supra*, defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest."). Additionally, other circuits have found that reliance on advice of counsel provides evidence of good faith and reasonableness, although it may not establish a state actor's reasonableness *per se*. Gomes v. Wood, 451 F.3d 1122 (10th Cir. 2006); Wadkins v. Arnold, 214 F.3d 535 (4th Cir. 2000); Forman v. Richmond Police Dept., 104 F.3d 950 (7th Cir. 1997). On the other hand, any shield afforded by approval of a neutral magistrate is dissipated when the officer knows probable cause does not exist or purposefully misleads the magistrate. Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994).

Applying this law to the facts of this case, Officer Rogers should be entitled to qualified

immunity because he made good faith reliance on the advice of an ADA. Officer Rogers asked for ADA Birbeck's permission before taking any action to arrest Plaintiff. He followed police policy in contacting an ADA to get permission for arrest under the Wiretap Arrest. It remains a question of fact whether the ADA received all pertinent facts before advising Defendant. However, viewing the facts in the light most favorable to Plaintiff, that Defendant Rogers did not tell ADA Birbeck he was also recording the traffic stop, Plaintiff has proffered no evidence to prove that this omission was purposeful or in bad faith. In fact, Defendant's actions in telephoning ADA Birbeck before taking any action to arrest negate the conclusion that Defendant purposefully omitted facts or acted in bad faith. Accord Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery."). Therefore, there is no evidence to support a conclusion other than that Defendant Rogers relied, in good faith, upon the advice of the ADA.

Accordingly, the Court finds that Defendant made a reasonable mistake about whether probable cause existed in relying on the determination of an ADA, and that a reasonable officer acting in Defendant Rogers' position would have likewise followed the advice of the ADA and arrested Plaintiff. Therefore, Defendant Rogers is entitled to qualified immunity and this claim will be dismissed as against Defendant Rogers in his personal capacity.

## 2. Qualified Immunity for Excessive Force Claim

The finding that qualified immunity applies to one claim of the case does not compel its application to all other claims; accordingly, the Court will now assess qualified immunity as it applies to Plaintiff's excessive force claim. Defendant argues that he is entitled to qualified

immunity on the excessive force claim for two reasons. First, Defendant argues that merely "bumping" or "nudging" Plaintiff into the police car is insufficient as a matter of law to establish a constitutional violation. Second, he argues that even if he did use excessive force, a reasonable officer in his position would not have known that such force was unlawful. Plaintiff asserts that qualified immunity does not apply because the arrest was unlawful, and thus any and all force used to execute it was, by definition, excessive.

The parties do not dispute that Plaintiff's arrest in this case was a seizure. Thus the issue is reduced to whether the force used to effect the seizure was objectively reasonable. A determination of objective reasonableness requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . Not every push or shove violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989). Other factors include "the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers may contend at one time." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006). Additionally, the Third Circuit has stated that it is important to consider whether "the physical force applied was of such an extent as to lead to injury." Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998) (internal citations omitted).

As a preliminary matter, the Court cannot agree with Plaintiff that any amount of force used by Defendant in this case was excessive *per se.* Because the Court found that a reasonable officer in Defendant Rogers' position would have relied on the ADA's approval and arrested

Plaintiff, the necessary amount of force used to effectuate that arrest must also have been reasonable. The Court will now analyze whether the facts, as set forth in the light most favorable to Plaintiff, establish an objectively unreasonable use of force.

The facts established through Plaintiff's own deposition testimony are that Defendant was not forced out of his own car, but rather "was told to get out of the car[,] [the officers] opened the door, and [he] got out." (Doc. No. 24, Ex. A, at 8-9.) Then, Plaintiff was handcuffed, and "sort of bumped" or "sort of nudged" into the police car, but the staple came out of his knee when he was being handcuffed. (Id.) Plaintiff states that he was obviously bleeding as a result of the incident and that he was "nudged" into the car because he could not get into the car on his own due to his knee injury. (Id. at 8-10.) There is no additional evidence that Plaintiff suffered pain during the handcuffing or afterward; Plaintiff did not testify that he made any complaints about pain involved in being handcuffed at the time, though he did tell them about his injury before "being put in the car." (Id.) Plaintiff also does not allege any force rising above the level of a "bump" or "nudge." In fact, Plaintiff stated that he noticed the staple had ripped out when he saw his knee was bleeding, not because he felt pain or as a result of force. (Doc. No. 24, Ex. A, at 9.)

The Graham factors provide minimal guidance for the situation at bar because the severity of force at issue in this case is not comparable to the deadly force at issue in Graham, and the safety of the public is not at issue with a Wiretap Act violation. See e.g. Saucier, 533 U.S. at 205-06 ("Graham does not always give a clear answer as to whether a particular application of force will be deemed excessive by the courts."). The evidence, even viewed in the light most favorable to Plaintiff through his own testimony, does not establish any level of force

above a bump or nudge to gain Plaintiff's entry into the arrest vehicle during the course of an arrest. The Court finds that the force used was not in itself enough to lead to injury and was not objectively unreasonable under the Third Circuit's holding in <u>Mellott</u>. <u>Mellott</u>, 161 F.3d at 117. Using the factors test nonetheless, the situation indicates that only a low level of force was reasonable: the Wiretap Act is not a violent crime, there were multiple officers at the scene and only one suspect, there was no indication that Plaintiff would flee and no evidence that he posed a threat to the officers. However, the evidence also indicates that only a low level of force was used: Plaintiff does not allege that any pain at all was involved with the handcuffing, which is when he claims the excessive force occurred; he testified that he was "bumped" or "nudged" into the car when he could not bend his knee to get into the car on his own. (Doc. No. 24, Ex. A, at 9.) Plaintiff also does not point to any evidence that the pre-existing injury worsened as a result of the force used by Defendant. Nor does his sworn deposition testimony support the claim in his brief that he was purposefully "struck" by Defendant. (Doc. No. 32, at 22.) In short, there is no evidence that more force than necessary was applied in Plaintiff's arrest. The Court finds that the allegations are insufficient to support Plaintiff's argument that a constitutional violation for excessive force occurred.

Moreover, *assuming arguendo*, a constitutional violation were to be found, it would have been a reasonable mistake for an officer to think that, in effectuating an arrest, nudging someone into the patrol car does not exceed the amount of force necessary to do his job when the arrestee otherwise has trouble getting into the car on his own.

Therefore, Defendant Rogers is entitled to qualified immunity on the excessive force claim.

### 3. Qualified Immunity on the First Amendment Claim

First, it should be noted that Defendant's briefs suppose a First Amendment *retaliation* claim, but Plaintiff does not allege retaliation. Instead, Plaintiff claims that Defendant's actions in asking him to stop recording and to relinquish his video camera directly violated Plaintiff's First Amendment rights. (Doc. No. 28 at 19; Doc. No. 32 at 21; Doc. No. 35, at 17.) Plaintiff asserts that his actions in videotaping the traffic stop were protected conduct, and thus any action by Defendant in restricting his videotaping must be narrowly tailored to serve a significant government interest. Accordingly, the Court will analyze Plaintiff's First Amendment claim as one brought under § 1983 asserting a violation of his right to videotape police conduct, not as a retaliation claim.

With the Supreme Court's recent decision in Pearson, and the Third Circuit's holding in Egolf v. Witmer, the Court appropriately begins the qualified immunity analysis on this claim with whether the right was clearly established, rather than whether the constitutional right was violated. Pearson v. Callahan, No. 07-751, 2009 WL 128768 (U.S. Jan. 21, 2009) (abridging the Saucier requirement that the question of whether a constitutional violation occurred must be assessed before a court determines whether that right is clearly established); Egolf, 526 F.3d 104, 110 (3d Cir. 2008) (holding that analysis of the constitutional violation might be deferred in cases easily determinable by an analysis of whether the right at issue is clearly established). To demonstrate that a right is clearly established, a party need not find a case with directly parallel facts. Hope v. Pelzer, 536 U.S. 730, 739 (2002). However, the contours of the constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id., quoting Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985). Using these

guidelines, the Court finds that it would not have been clear to a reasonable officer in Defendant

Rogers' position that arresting Plaintiff Kelly on the basis of the Wiretap Act would violate

Plaintiff's First Amendment rights.

There are two reasons for this decision. First, it was, and still is, unclear whether

Plaintiff had a First Amendment right to videotape the police stop at all. While a few courts have

held that a citizen has a First Amendment right to videotape police conduct, subject to reasonable

time, place, and manner restrictions, such a right has not been determined by the Third Circuit.

Compare Gilles v. Davis, 427 F.3d 197, 212 n.14 (3d Cir. 2005) ("[V]ideotaping or

photographing the police in the performance of their duties on public property *may* be a

protected activity. . . . More generally, photography or videography that has a communicative or

expressive purpose enjoys some First Amendment protection.") (emphasis added), with Smith v.

City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding that there is a First Amendment

right to videotape police conduct but denying plaintiff's § 1983 action for failure to state how

defendants violated that right), and Robinson v. Fetterman, 378 F. Supp. 2d 534 541-542

(finding a First Amendment right to videotape and a valid First Amendment *retaliation* claim

where police arrested citizen under the auspices of a clearly invalid court directive). At most, the

Third Circuit has clearly stated that there is some First Amendment protection for videography

that has a communicative or expressive purpose. Gilles, 427 F.3d at 212.

Second, even if it were sufficiently clear that there are First Amendment rights protecting

Plaintiff's actions, a reasonable officer in Defendant Rogers' position would nonetheless have

believed his actions in arresting Plaintiff pursuant to the Wiretap Act were constitutional. The

Wiretap Act, which Plaintiff does not challenge as unconstitutional, by its very terms restricts the

manner of allowable speech by curbing one's right to intentionally videotape a communication when the person being recorded has an expectation of privacy. 18 Pa. Const. Stat. §§ 5702-5703. Defendant's restrictions of Plaintiff's right to videotape were conducted in order to enforce the Wiretap Act. Because the Court found, *infra*, that it was reasonable for Defendant Rogers to have believed he was acting on probable cause to arrest Plaintiff, it follows that it was reasonable for him to believe that such an arrest, pursuant to a valid statute, would not violate Plaintiff's First Amendment rights.

Finally, the Court notes that <u>Robinson</u> (distinguishable also because it is a retaliation claim) does not establish that a reasonable officer would have known he was violating the law. In <u>Robinson</u>, the court emphasized that "no state trooper could have reasonably believed that the oral statement of the District Justice, unaccompanied by anything in writing and made over two years before the incident in question in this lawsuit, constituted a formal restraining order to be enforced by arresting [Plaintiff]." <u>Robinson</u>, 378 F. Supp. 2d at 542. Here, not only is the Wiretap Act a valid statute, but the Court does not find that Defendant acted outside the boundary of what a reasonable officer would have believed or done in Defendant's situation. Based on ADA Birbeck's approval for the arrest, and the fact the law had been in existence for nearly thirty years (the Wiretap Act was enacted in its original form in 1978), a reasonable officer in Defendant's position would have believed that his attempts to enforce the Wiretap Act would not violate Plaintiff's constitutional rights. In fact, ADA Birbeck; David Freed, DA of Cumberland County; and John Mancke, a local defense attorney familiar with the wiretapping law who was interviewed regarding the incident, all were trained in the law and thought that Kelly might have violated the Wiretap Act. (Doc. No. 27 ¶¶ 14, 44; Doc. No. 27, Ex. J, at 26;)

See also, Center for Bio-Ethical Reform, 533 F.3d at 794 (9th Cir. 2008) (finding qualified immunity applied when "the officers could have made a reasonable mistake in believing that [the state statute] applied to Plaintiffs' conduct and thus advanced a significant state interest").

Thus, the Court finds that the law was not clearly established and therefore Defendant Rogers is entitled to qualified immunity on Plaintiff's First Amendment challenge, as well.

**B. Borough of Carlisle liability: <u>Monell</u>**

It is established that municipalities cannot be liable for § 1983 claims under a theory of *respondeat superior*. Monell v. Dept. of Social Servs., 436 U.S. 658 (1978). Here, because the policy or practice at issue does not facially violate the law, Plaintiff can only establish municipal liability if he shows that the Borough of Carlisle has a policy or custom that amounts to deliberate indifference of the rights of the people with whom the police come into contact. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004). "Policy" includes official proclamations made by a municipal decision-maker with final authority, and "custom" is defined as "practices of state officials . . . so permanent and well settled as to virtually constitute law." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotations omitted). The policy or custom must be the "moving force" behind the plaintiff's injury. Id. at 276.

Plaintiff alleges that the Borough of Carlisle is liable both because there was a policy that violated his rights and also because it failed to adequately train its officers to avoid constitutional violations. To sustain a "failure to train" claim, a plaintiff must prove that the failure to train police officers amounts to deliberate indifference, which usually requires proof of a pattern of underlying constitutional violations. Carswell, 381 F.3d at 244. However, Plaintiff could also establish a failure to train claim if he shows that a violation of his federal rights is a "highly

predictable consequence" of the failure to train or "to equip law enforcement officers with specific tools to handle recurring situations." Berg, 219 F.3d at 276 (internal citations omitted).

Plaintiff first argues that the Borough was deliberately indifferent because Defendant followed police policy at all times by "blindly follow[ing] the DA office's authorization," and a constitutional violation resulted. Plaintiff does not offer any proof that the policy of calling a DA for authorization before proceeding to arrest, and following that advice unless outrageous, amounts to deliberate indifference of constitutional violations. In fact, a policy that requires police officers to solicit legal advice before making arrests, and requires police officers to follow that advice unless the advice is obviously faulty, suggests that few unsupported arrests, if any, would occur. It is unclear how this policy in any way demonstrates a deliberate indifference to Plaintiff's rights.

Plaintiff next alleges that the ratification of Defendant Rogers' actions by Chief Margeson suggests a policy or custom of deliberate indifference because Margeson is a policymaker. The Court also finds this argument unpersuasive. Even though, in hindsight, probable cause may not have existed to arrest Plaintiff, Chief Margeson's after-the-fact acceptance of Defendant Rogers' actions in calling the DA's office and following that advice does not establish deliberate indifference or ratification. "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988). Second, Plaintiff has not shown that Chief Margeson is a policy-maker for the Borough of Carlisle as established by state law. Praprotnik, 485 U.S. at 124 ("[T]he identification of policymaking officials is a question of state law."). Accordingly, Margeson's mistake as to what constitutes an expectation

of privacy under the Wiretap Act and sanction of Defendant Rogers' actions does not, without more, demonstrate deliberate indifference.

Lastly, Plaintiff alleges that there was inadequate training about what constitutes an "oral communication" under the Wiretap Act. Because Plaintiff has not shown a pattern of constitutional violations, he must carry the heavy burden of showing that the failure to train made constitutional violations such as those experienced by Plaintiff "highly predictable." Plaintiff argues that because neither Chief Margeson nor Defendant Rogers recalls whether general training regarding the First Amendment occurred, the training on First Amendment rights is so inadequate that violations of federal rights are highly predictable. The Court disagrees. As a practical matter, a municipality cannot be expected to train every officer on every element of every statute or law that exists in Pennsylvania. Such an undertaking would be ineffective at best, futile at worst, and most importantly, is beyond what is required by law. Moreover, Chief Margeson's unopposed deposition testimony indicates that more in-depth and specific training on the Wiretap Act *is* given to those officers most likely to encounter Wiretap Act violations. (Doc. No. 27, Ex. J, at 15-16.) When this is coupled with the policy of requiring officers to contact an ADA to determine whether probable cause exists to make an arrest, the evidence suggests only that the Borough of Carlisle is not indifferent to Plaintiff's rights, but has channeled resources specifically to protect citizens from these types of violations where they are most likely to occur. Indeed, the Borough of Carlisle policy attempts to equip police officers with the most powerful tool to ensure rights are not violated: the on-call availability of a person trained in the law. It is neither predictable nor highly likely that a constitutional violation will result from an independent approval and assessment of the situation by a trained attorney. As

such, Plaintiff has not established liability for Carlisle under a failure to train theory.

Accordingly, the Court finds that Plaintiff has not shown that the Borough of Carlisle is liable for § 1983 violations in this case. Summary judgment is awarded in favor of Defendant Carlisle on this issue.

**C. False Arrest, False Imprisonment, Malicious Prosecution and Excessive Force claims**

Because the Court finds that Officer Rogers is entitled to qualified immunity and the Borough of Carlisle is not liable under <u>Monell</u>, these claims are dismissed. Summary judgment is awarded in favor of Defendants.

**D. First Amendment Retaliation Claim**

Plaintiff's brief in opposition states that Plaintiff is not actually bringing a First Amendment retaliation claim, but rather a claim that Defendant's action directly violated his First Amendment rights: "Plaintiff need not prove a claim of retaliation to demonstrate a First Amendment violation" and Doc. No. 28 at 11 "Defendants violated Plaintiff's First Amendment <u>right to record the traffic stop</u>." (Doc. No. 32, at 13.).  Accordingly, the Court will dismiss this part of Defendant's motion as moot.

**E. First Amendment Claim**

Rather than making a First Amendment retaliation claim, Plaintiff argues that Defendant's actions in forcing him to stop filming violated his First Amendment right to record the traffic stop. As explained above, the Court finds that Officer Rogers is entitled to qualified immunity and the Borough of Carlisle is not liable for his actions under <u>Monell</u>. Therefore this claim is dismissed; summary judgment is awarded in favor of Defendants.

**F. Jurisdiction of Remaining State Law Claims**

This Court is given jurisdiction over the § 1983 claims in this case based on federal question jurisdiction. The Court may exercise supplemental jurisdiction to hear the remaining Pennsylvania common law claims if they arise from the same nucleus of operative fact as the federal claims. 28 U.S.C. § 1367(a). The United States Supreme Court has long counseled that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966). The Court is given this discretion pursuant to 28 U.S.C. § 1367(c)(3), which states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> . . .
>
> (3)    the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c).

Because the Court has found that the federal claims will be dismissed, the Court will exercise its discretion to dismiss the remaining state law claims. The Third Circuit has explicitly recognized that it is proper for a district court, when the federal claims are dismissed, to dismiss any pendent claims over which the Court only had supplemental jurisdiction. <u>Hedges v. Musco</u>, 204 F.3d 109 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added).

Accordingly, the Court declines to exercise supplemental jurisdiction and Plaintiff's remaining state law claims are dismissed for lack of jurisdiction without comment upon the

merits, and there is no need to discuss the availability of injunctive or declaratory relief.

**IV. CONCLUSION**

Based on the foregoing reasoning, the Court finds that Defendant Rogers is entitled to qualified immunity on all the federal claims and the Borough of Carlisle is not liable under Monell; therefore Defendants' motion for summary judgment is granted as to all federal claims and Plaintiff's motion for summary judgment is denied. Regarding the state law claims, the Court declines to exercise supplemental jurisdiction on the basis that all federal claims are dismissed and state common law claims will be best determined in state court. Accordingly, those claims are dismissed for lack of subject-matter jurisdiction.

An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-1573** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **THE BOROUGH OF CARLISLE and** | : | |
| **DAVID J. ROGERS, individually and as** | : | |
| **a police officer for the Carlisle Borough** | : | |
| **Police Department,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, this May 4 2009, upon consideration of Plaintiff's motion for

partial summary judgment (Doc. No. 37) and Defendants' motion for summary judgment (Doc.

No. 23), **IT IS HEREBY ORDERED** that summary judgment is **granted** in favor all

Defendants and against Plaintiff for Count I. **IT IS FURTHER ORDERED** that Count II is

**dismissed** for lack of supplemental jurisdiction.  The Clerk of Court is directed to close the case.


S/ Yvette Kane

Chief Judge Yvette Kane
United States District Court
Middle District of Pennsylvania