IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:07-cv-1573 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **THE BOROUGH OF CARLISLE and** | : | |
| **DAVID J. ROGERS, individually and as** | : | |
| **a police officer for the Carlisle Borough** | : | |
| **Police Department,** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

On May 4, 2009, this Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. (Doc. No. 40.) Plaintiff appealed to the United States Court of Appeals for the Third Circuit. (Doc. No. 42.) On October 4, 2010, the Third Circuit affirmed this Court's order in part and vacated the order in part. Kelly v. Borough of Carlisle, 622 F.3d 248, 256-58 (3d Cir. 2010). The Third Circuit remanded the matter to this Court to make additional factual findings and to reconsider its order granting Defendant David Rogers's motion for summary judgment on Plaintiff's Fourth Amendment claims. Id. For the reasons stated more fully herein, the Court will deny Defendant's motion for summary judgment.

**I.   BACKGROUND**

On May 24, 2007, in Carlisle, Pennsylvania, Plaintiff Brian Kelly was riding as a passenger in a truck driven by his friend Tyler Shopp. (Doc. No. 24 ¶ 1.) Defendant David Rogers, a police officer for the Carlisle Police Department, initiated a traffic stop after he observed Shopp speeding and operating a vehicle that appeared to be in violation of an ordinance

1

regulating vehicle bumper height.  (Doc. No. 27 ¶ 2.)  Plaintiff, who was carrying a hand-held video camera, turned on the camera and began to record Defendant.  (Id. ¶¶ 3-4.)  Plaintiff kept the camera in his lap at all times when Defendant was at the truck.[1]  (Id. ¶ 5; Doc. No. 27-6, Ex. C at 30:22.)  It is disputed whether the camera was in plain view or was covered by Plaintiff's hands.  (Doc. No. 24 ¶ 3; Doc. No. 27 ¶ 5.)  For purposes of Defendant's motion for summary judgment, the Court will credit Plaintiff's assertion that the camera sat uncovered on his lap in the palm of his hand.  (Doc. No. 27-6, Ex. C at 39:8-10.)  However, there does not appear to be any dispute that Plaintiff's hands were also in his lap during the stop.  (Doc. No. 33-3, Ex. B at 13:14-22.)  Nor is there any dispute that Plaintiff never told Defendant that he was recording the stop.  (Doc. No. 27-6, Ex. C at 37:24.)  Further, it is undisputed that the dimensions of the camera in question were approximately two inches wide by four inches long by two inches tall.  (Doc. No. 27-6, Ex. C at 39:9-12.)

     Near the end of the traffic stop Defendant told Plaintiff and Shopp that the stop was being recorded by a dashboard camera on the police car and a microphone in Defendant's shirt pocket.  (Doc. No. 27 ¶ 6.)  As shown in the videotape, after Defendant returned to Shopp's truck with a citation, Shopp began to question Defendant regarding how many "points" he would receive for the cited violations.  (Doc. No. 29.)  As Defendant began to answer Shopp's question, he stopped and demanded that Plaintiff cease recording and surrender the videotape.  (Doc. No. 29.)  Plaintiff complied.  (Doc. No. 27 ¶ 8.)  Defendant returned to his police vehicle and called Assistant District Attorney John Birbeck to determine whether Plaintiff's actions violated the

---

[1] The video of the incident indicates that Plaintiff raised the camera to eye level when Defendant returned to the police vehicle, and Plaintiff then lowered the camera again when Defendant returned to Shopp's truck.  (Doc. No. 29.)

Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701 et seq., and if so, to receive permission to file appropriate charges. (Doc. No. 27 ¶¶ 9-12.)

As ADA Birbeck explained in his uncontested testimony, it is the policy of the Cumberland County District Attorney's Office to require police officers to receive approval prior to making certain types of arrests. (Hearing Transcript.) ADA Birbeck explained that during the call Defendant relayed the facts to him and asked him whether those facts gave rise to probable cause to arrest Plaintiff for a Wiretap Act violation. (Hearing Transcript.) ADA Birbeck believed the facts did give rise to probable cause and as a result gave Defendant an approval number to charge Plaintiff with a violation of the Wiretap Act. (Hearing Transcript.) In his deposition ADA Birbeck indicated that Defendant did not affirmatively state that he was videotaping the stop in accordance with standard Carlisle Police Department procedure. (Doc. No. 33-4, Ex. G at 7:16-21.)

## II.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

---

[2] Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

(1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

### III. DISCUSSION

In its opinion remanding this matter, the Court of Appeals outlined three questions for this Court's consideration. The first two questions are questions of fact, namely: (1) whether Plaintiff hid the camera and was in fact "secretly" recording Defendant during the stop; and (2) whether Defendant called ADA Birbeck to seek legal advice. Kelly, 622 F.3d at 256. The third question is a question of law. The Court of Appeals held that it was clearly established that probable cause did not exist to arrest Plaintiff for a violation of the Pennsylvania Wiretap Act. In light of this holding, the court of appeals asked this Court to determine "how the Pennsylvania Wiretap Act fits into the landscape painted" by cases holding that police officers generally have a duty to know the basic elements of the laws they enforce. Id. at 258. The Court interprets this directive as requiring it to determine whether Defendant's erroneous probable cause determination was unreasonable as a matter of law and therefore not entitled to qualified immunity. Because an affirmative response to the legal inquiry would obviate the need for any further findings of fact, the Court will consider this issue first. Then, if necessary, the Court will make the findings of fact ordered by the court of appeals.

**A. Whether a Police Officer Can Ever Be Entitled to Qualified Immunity for an Erroneous Probable Cause Determination Where the Law is Clearly Established**

In its order remanding this matter, the court of appeals found that:

> [A]t the time of Kelly's arrest, it was clearly established that a reasonable expectation of privacy was a prerequisite for a Wiretap Act violation. Even more to the point, two Pennsylvania Supreme Court cases – one almost 20 years old at the time of Kelly's arrest – had held that covertly recording police officers was not a violation of the Act. Finally, it was also clearly established that police officers do not have a reasonable expectation of privacy when recording conversations with suspects.

Id. at 258. The court of appeals further observed that "police officers generally have a duty to know the basic elements of the laws they enforce." Id. (citing Lawrence v. Reed, 406 F.3d 1224, 1234 (10th Cir. 2005); Peterson v. City of Plymouth, 945 F.2d 1416, 1420-21 (8th Cir. 1991); Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987)). Against this background, this Court must determine whether these findings must necessarily lead to the conclusion that qualified immunity is unavailable to Defendant Rogers. The Court concludes that they do not.[3]

Applying the Third Circuit's observation that police officers generally have a duty to know the elements of the laws they enforce as a starting point, the Court acknowledges that there exist exceptions to this general rule. Indeed, in establishing the general rule that police officers are required to know clearly established law the United States Supreme Court noted that the rule is not absolute. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982) (holding that in extraordinary circumstances where a police officer "neither knew nor should have known of the relevant legal standard" qualified immunity may still be available). In Amore v. Novarro, 624 F.3d 522 (2d Cir. 2010), the United States Court of Appeals for the Second Circuit considered when a police officer could still be entitled to qualified immunity when making a probable cause determination that was contrary to clearly established law. The Second Circuit concluded that:

> The statement in Harlow that reasonably competent public officials know clearly established law[] is a legal fiction. Qualified immunity is appropriate in those situations in which the legal fiction does not make sense and applying that fiction would create problems that qualified immunity is intended to avert.

---

[3] Because the court of appeals asks the Court whether qualified immunity must necessarily be denied, in this section the Court will construe the facts in a light most favorable to the Defendant to determine whether there are any circumstances under which qualified immunity would be warranted. In all other sections the Court views the facts in a light most favorable to Plaintiff.

Id. at 535-36 (internal citations omitted); see also Lawrence v. Reed, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting).

In Amore v. Novarro, a police officer arrested an individual for a crime that had been ruled unconstitutional nearly twenty years prior to the arrest. 624 F.3d at 522. In that case, Amore offered to perform a sexual act on Novarro, a police officer, in a public park on October 19, 2001. Id. at 526. Novarro consulted another police officer's copy of the New York Penal Law, and charged Amore with loitering in violation of New York Penal Law § 240.35(3). Id. at 527. Although the loitering statute was still contained in the copy of the New York Penal Law that Novarro consulted, the New York Court of Appeals ruled the statute unconstitutional in 1983, People v. Uplinger, 447 N.E.2d 62 (N.Y. 1983). Amore, 624 F.3d at 527. Amore sued Novarro under 42 U.S.C. § 1983 alleging false arrest, and Novarro invoked the defense of qualified immunity. Id. The district court denied summary judgment,[4] finding that Novarro was not entitled to qualified immunity on the false arrest claim because the law on the loitering statute was clearly established and because police officers are expected to know when "the state's highest court has pronounced a statute facially unconstitutional." See Amore v. City of Ithaca, No. 5:04-cv-176, 2008 U.S. Dist. LEXIS 26035, at *16 (N.D.N.Y Mar. 28, 2008)).

Looking to Judge Learned Hand, the Court of Appeals reversed. In Gregoire v. Biddle, the Judge Hand explained that:

> [T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and

---

[4] The district court converted Novarro's motion to dismiss into a motion for summary judgment.

>again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative   In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

177 F.2d 579, 581 (2d Cir. 1949). Relying on this reasoning, the court in Amore held that because Novarro "acted deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law before taking the actions for which the plaintiff now seeks to hold him accountable, we cannot say that Novarro's arrest of Amore was objectively unreasonable." Amore, 624 F.3d at 535. Accordingly, the Second Circuit held that even where a defendant violates a clearly established right, he may still be entitled to qualified immunity in limited circumstances. Id.; see also Friedman v. Boucher, 580 F.3d 847, 859 (9th Cir. 2009) (holding that a police officer is not entitled to qualified immunity based on his reliance on a prosecutor's advice when the law is "clearly established and would be known to a reasonable officer in the circumstances" (quoting Stevens v. Rose, 298 F.3d 880, 884 (9th Cir. 2002) (emphasis added)).

In the present case, a finding that the Defendant is not, as a matter of law, entitled to qualified immunity solely because he made an erroneous probable cause determination regarding a statute that was clearly established would unfairly burden police officers and "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." See Gregoire, 177 F.2d at 581. Although the law in this matter was clearly established

8

and showed that Defendant did not have probable cause to make an arrest, the Court cannot conclude that Defendant must be denied qualified immunity on this basis. As the court of appeals noted in this matter:

> Considering the proliferation of laws and their relative complexity in the context of a rapidly changing world, we cannot fairly require police officers in the field to be as conversant in the law as lawyers and judges who have the benefit not only of formal legal training, but also the advantage of deliberate study.

Kelly, 622 F.3d at 255. This is especially true in the context of statutes, such as the Wiretap Act, that the average "cop on the beat" would not confront on a regular basis.[5]

This, of course, does not justify a rule that police officers are entitled to automatic immunity when confronted with a difficult question of law. However, the qualified immunity rule must protect both the citizenry from reckless police officers and responsible police officers from burdensome litigation. Accordingly, the Court concludes that even when the law is clearly established, where an officer acts "deliberately and rationally in seeking to determine the then-

---

[5] Although not controlling on the qualified immunity issue, the Court notes that in the hearing on this matter Defendant indicated that in his fifteen years as a police officer he has never handled a Wiretap Act case and has never received any training on the Wiretap Act. Nor has the Carlisle Police Department ever conducted training on the Wiretap Act. Indeed, Defendant's only experience with the Wiretap Act is being told that failing to inform individuals during traffic stops that he himself is recording the stop would constitute a violation of the Wiretap Act.

The Court further notes that ADA Birbeck and a magistrate judge, both of whom are learned in the law, found that the facts confronted by Defendant gave rise to probable cause. The Court would also be remiss if it did not note that as recently as last year, a federal district court in the Western District of Pennsylvania held that "Pennsylvania law is not so clear so as to proclaim that citizens are permitted to record police officers carrying out their official duties." Matheny v. Cnty. of Allegheny, No. 09-1070, 2010 WL 1007859, at *9 (W.D. Pa. Mar. 16, 2010); see also Commonwelath v. McIvor, 670 A.2d 697, 704 n.5 (Pa. Super. Ct. 1996) (noting that it would violate the Wiretap Act for a motorist to record a police officer during a traffic stop).

valid, applicable and enforceable law before taking the actions for which the plaintiff [] seeks to hold him accountable," qualified immunity may still be available.  See Amore, 624 F.3d at 535. This conclusion is consistent with the holding of the court of appeals in this matter that a police officer's good faith reliance on a prosecutor's opinion regarding probable cause is presumptively entitled to qualified immunity provided that reliance is reasonable.  Kelly, 622 F.3d at 255-56. In reaching this conclusion, the Court merely acknowledges that although reliance on a legal opinion that is contrary to clearly established law will generally be found to be unreasonable or in bad faith, the relative obscurity of a statute may, in limited cases, support a finding that a police officer's reliance on bad legal advice is still reasonable and entitled to qualified immunity. Therefore, although the law in this matter was clearly established, the Court cannot say, without resolving disputed questions of fact, that Defendant's reliance on ADA Birbeck's advice was objectively unreasonable.  See Amore, 624 F.3d at 535.

### B.     Factual Issues on Remand

Having determined that Defendant may still be entitled to qualified immunity even though he made an error of clearly established law, the Court now turns to the factual issues identified by the Court of Appeals to be addressed on remand.  In its initial review of this case, this Court found that "[i]t is disputed whether the camera was in plain view or was covered by Plaintiff's hands."  (Doc. No. 40 at 2.)  However, the Court further found that, viewing the facts in the light most favorable to Plaintiff, "Defendant knew he was being videotaped the entire time and therefore had no reasonable expectation of privacy in the traffic stop."  (Doc. No. 40 at 8.) Nevertheless, the Court of Appeals directed that this Court make findings on the issue of whether Defendant was aware that he was being recorded when he initially approached the car.

Accordingly, the Court reaffirms its finding that, for purposes of the motion for summary judgment, Defendant knew he was being recorded and relies on this finding in resolving Defendant's motion for summary judgment.

Next, the court of appeals orders this Court to make clear factual findings regarding whether Defendant called ADA Birbeck "to seek legal advice" or "to obtain an approval number for an arrest." Kelly, 622 F.3d at 256.  As it did in its initial order, the Court concludes that Defendant did both.  In its initial order the Court found that Defendant "called the District Attorney's office to determine whether Kelly had violated the Wiretapping and Electronic Surveillance Control Act." (Doc. No. 40 at 2.)  This Court went on to find that Defendant told ADA Birbeck that "he had pulled over a truck for a traffic violation and that the passenger in the truck had been secretly and nonconsensually recording [him]."  (Id.)  The Court further found that ADA Birbeck then gave Defendant his approval to charge Plaintiff.  (Id.)  There is no evidence of record that calls these findings into question.  Although Plaintiff speculates about the content of the conversation, Plaintiff can point to no competent evidence to support his speculation.  Plaintiff was not a party to the conversation, Plaintiff did not overhear the conversation, Plaintiff did not witness the call in any way, and all parties to the conversation disagree with Plaintiff's characterization of it.  Plaintiff's mere speculation is insufficient to create a genuine issue of material fact.  Kania v. Potter, 358 F. App'x. 338, 343 (3d Cir. 2009) (finding that speculation "is insufficient to defeat summary judgment"); Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 582 (3d Cir. 1996).  Accordingly, the Court reaffirms its findings on these issues.

Upon further review, however, there are issues concerning the content of the phone call

that create genuine issues of material fact for a jury to resolve. First, there is a question of fact regarding whether Defendant misled ADA Birbeck by informing Birbeck that Plaintiff was surreptitiously recording Defendant. (Doc. No. 53 at 22.) Defendant contends the recording device was hidden. Further, Shopp, who was sitting next to Plaintiff in the truck, testified that he was unaware that Plaintiff was recording the stop and believed Defendant was unaware that he was being recorded. (Doc. No. 33-3, Ex. B at 11-14.) However, Plaintiff's statements to the contrary create an issue of fact regarding whether Defendant's statement to ADA Birbeck was truthful. A finding that Plaintiff was not surreptitiously recording Defendant may support a finding that Defendant intentionally misled ADA Birbeck, thus calling into question Defendant's good faith reliance on ADA Birbeck's advice in charging Plaintiff. See Cox v. Hainey, 391 F.3d 25, 36 (1st Cir. 2004);[6] Dixon v. Wallowa Cnty., 336 F.3d 1013, 1019 (9th Cir. 2003); Hollingsworth v. Hill, 110 F.3d 733, 741 (10th Cir. 1997)).

In addition, there is a question of material fact regarding whether Defendant told ADA Birbeck that he was also recording the stop. Whether Defendant was recording the stop is material to the question of whether there was probable cause to make an arrest, as it goes directly to the question of whether Defendant had a reasonable expectation of privacy. Kelly, 622 F.3d at 258 (noting that under Pennsylvania law "police officers do not have a reasonable expectation

---

[6] Although the Third Circuit declined to adopt the First Circuit's "totality of the circumstances approach" to cases in which an officer contacted a prosecutor for legal advice, the court did acknowledge that it "agree[d] with much of the First Circuit's opinion in Cox." Kelly, 622 F.3d at 255-56. Moreover, permitting a Plaintiff to rebut the presumption of reasonableness with a showing that the officer made a material omission or misstatement of fact is consistent with the Third Circuit's approach to cases in which an officer obtains a warrant to arrest from a neutral magistrate. Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). Accordingly, the Court will apply this standard to these circumstances.

of privacy when recording conversations with suspects"). Defendant may be able to establish that he did tell ADA Birbeck that he was taping the stop. Or Defendant may be able to establish that it was reasonable for him to believe that ADA Birbeck knew he was taping the stop given that ADA Birbeck was the assistant district attorney assigned to Carlisle and that it was the established policy of the Carlisle Police Department to record all traffic stops. However, when viewed in the light most favorable to Plaintiff it is possible that a jury could conclude that Defendant purposefully withheld facts from ADA Birbeck in an effort to receive an approval to charge that was unsupported by the facts known to him. Again, such an omission could call into question Defendant's good faith reliance on ADA Birbeck's advice.

### C.     Reconsideration of Qualified Immunity

Having made the findings required by the Third Circuit, the Court will now reconsider its order granting Defendant's motion for summary judgment on the Fourth Amendment issue. The Court will first briefly review the qualified immunity standard and then apply this rule to the facts in this case viewed in a light most favorable to Plaintiff.

#### 1.     Qualified Immunity Standard

The Supreme Court has held that "where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). Preferably, qualified immunity determinations are made at the summary judgment stage to ensure that qualified officers receive the benefit of immunity from suit as well as immunity from liability. Carswell v. Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004); see also Pearson v. Callahan, 555 U.S. 223; 129 S. Ct. 808, 815 (2009) (noting that "[b]ecause qualified immunity

is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial" (internal citations omitted)). Qualified immunity is a question of law for the Court and requires the Court to ask two questions: (1) whether, when considering the facts in the light most favorable to the plaintiff, the officer's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the arrest. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 200-02; Gilles v. Davis, 427 F.3d 197, 205 (3d Cir. 2005).

"The second prong of the qualified immunity analysis is focused upon whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008). Qualified immunity determinations should take into account the entire episode and allow for cases where officers "reasonably but mistakenly conclude that probable cause to make an arrest is present . . . . [I]n such cases, those officers . . . will not be held personally liable." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). Thus, "the qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. at 483; Carswell, 381 F.3d 235. The Supreme Court recently determined that the two prongs of the qualified immunity inquiry may be taken up in either order, at the discretion of the trial court judge. Pearson, 129 S.Ct. at 821.

On appeal in this matter the Third Circuit held that "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." Kelly, 622 F.3d at 255-56. Of course, that reliance must be "objectively reasonable."

14

Id.  Plaintiff may rebut the presumption by showing that a reasonable officer would not have relied on the prosecutor's advice.  Id. at 256.  Moreover, the Second Circuit has held that where an officer acts "deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law before taking the actions for which the plaintiff [] seeks to hold him accountable," qualified immunity may still be available.  Amore, 624 F.3d at 535.

### 2. Whether Defendant is Entitled to Qualified Immunity

In the case at bar, the Court is bound to assume certain facts.  First, it must assume that during the stop Plaintiff made an audio and visual recording of Defendant.  Plaintiff did not request Defendant's permission to make the recording, nor did Plaintiff tell Defendant he was making the recording.  Plaintiff, sitting in the passenger seat as Defendant was standing on the driver's side of the car, kept the camera in his lap the entire time Defendant was at the car.  The Court must further assume, however, that although Plaintiff's hands were in his lap, his hands were not covering the camera.  In addition, Defendant saw Plaintiff holding the camera measuring approximately two inches wide by four inches long by two inches tall at the outset of the stop and did not object to the recording until after issuing Shopp a traffic citation.  Before arresting Plaintiff, Defendant confiscated the camera and called ADA Birbeck.  Defendant informed ADA Birbeck that he had pulled over a truck for a traffic violation and that the passenger in the truck had been secretly recording him without his permission.  Defendant did not inform ADA Birbeck that pursuant to standard Carlisle Police Department procedure he was also recording the stop.  After relaying these facts, Defendant asked if the conduct gave rise to a Wiretap Act violation.  After reviewing the statute, ADA Birbeck informed Defendant that there was probable cause for an arrest and gave Defendant an approval number to charge Plaintiff.

As the Court previously explained, when viewed in a light most favorable to Plaintiff, these facts could give rise to the conclusion that Defendant deliberately misled ADA Birbeck when he called for permission to charge Plaintiff. If a jury concluded that Defendant misled ADA Birbeck to secure an approval to arrest, then the Court could not conclude that Defendant relied in good faith on ADA Birbeck's advice. See Kelly, 622 F.3d at 255-56. Accordingly, although qualified immunity should be decided at the earliest possible stage in the litigation, Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987), the outstanding dispute of material fact prevents the Court from making the qualified immunity determination at summary judgment. See, e.g., Curley v. Klem, 298 F.3d 271, 278-79 (3d Cir. 2002). This is not to say that Defendant is not entitled to qualified immunity. Rather, the Court concludes that it requires a jury to resolve the outstanding questions of fact identified in this memorandum prior to making the qualified immunity determination.

### C. State Law Claims

In this Court's prior order, after granting summary judgment on all federal claims, the Court exercised its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims. (Doc. No. 40 at 20-21.) Now, having reinstated Plaintiff's Fourth Amendment claims, the Court will reassert its jurisdiction over Plaintiff's state law claims. To the extent that Defendant wishes to reassert his motion for summary judgment on these claims, the Court will grant the parties leave to supplement their arguments on these claims.

## IV. CONCLUSION

Applying the newly adopted standard for evaluating police officer reliance on legal advice, this Court must conclude that Defendant is not entitled to qualified immunity at this stage

of the proceedings. Factual disputes bearing on Defendant's good faith and reasonableness in relying on ADA Birbeck's legal advice remain outstanding in this matter. The Court requires a jury to resolve these disputes. Accordingly, although qualified immunity may ultimately shield Defendant from liability, the Court cannot grant his motion for summary judgment.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| | : | |
| Plaintiff | : | Civil Action No. 1:07-cv-1573 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **THE BOROUGH OF CARLISLE and DAVID J. ROGERS, individually and as a police officer for the Carlisle Borough Police Department,** | : | |
| | : | |
| Defendant | : | |

**ORDER**

**AND NOW**, on this 6th day of September 2011, **IT IS HEREBY ORDERED** that Defendant David Rogers's motion for summary judgment (Doc. No. 23) on Count I of Plaintiff's complaint is **DENIED**. To the extent that Defendant wishes to reassert his motion for summary judgment on Count II of Plaintiff's complaint, Defendant shall be given twenty-one days from the date of this order to so inform this Court by letter and file any supplemental briefing he deems necessary, not to exceed ten pages in length. If Defendant elects to file supplemental briefing, Plaintiff may file a brief in opposition not to exceed ten pages in length twenty-one days after the filing of Defendant's supplemental brief.

                                                                         S/ Yvette Kane
                                                                        Chief Judge Yvette Kane
                                                                        United States District Court
                                                                        Middle District of Pennsylvania