VIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-1573** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DAVID J. ROGERS,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Because of its unusual procedural history, this matter was presented to a jury for trial of discrete factual questions relevant to the issue of whether Defendant David Rogers is entitled to qualified immunity on Plaintiff Brian Kelly's Fourth Amendment claims. On February 21, 2012, the jury returned a verdict on those questions. For the reasons stated more fully herein, based on the facts as determined at trial, the Court finds that Defendant is entitled to qualified immunity on Plaintiff's claims based on the arrest of Plaintiff but is not entitled to qualified immunity as to the seizure of Plaintiff's camera. Accordingly, the Court will enter judgment in favor of Defendant in part and in favor of Plaintiff in part.

## I.      PROCEDURAL BACKGROUND

Plaintiff Brian Kelly commenced this action by filing a complaint against the Borough of Carlisle and David Rogers on August 27, 2007. (Doc. No. 1.) Plaintiff alleged violations of his First Amendment and Fourth Amendment rights and also raised various state law claims arising from Defendant's arrest of Plaintiff Kelly on May 24, 2007. (Id.) On May 4, 2009, this Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for partial summary judgment. Kelly v. Borough of Carlisle (Kelly I), No. 1:07-cv-1573, 2009 U.S. Dist.

LEXIS 37618 (M.D. Pa. May 4, 2009).  In that order, the Court found that Defendant Borough of

Carlisle was not a proper defendant and granted summary judgment in its favor on all federal

claims.  Id.  The Court further held that Defendant was entitled to qualified immunity on the First

and Fourth Amendment claims.  Id.  All federal claims having been disposed of, the Court

declined to exercise supplemental jurisdiction on all remaining state law claims.  Id.  The Court

then entered judgment in favor of Defendants.  (Doc. No. 41.)

Plaintiff filed a notice of appeal on June 2, 2009.  (Doc. No. 42.)  On November 8, 2010,

the United States Court of Appeals for the Third Circuit affirmed this Court's judgment in part

and vacated the judgment in part.  Kelly v. Borough of Carlisle (Kelly II), 622 F.3d 248 (3d Cir.

2010).  Specifically, the Court of Appeals vacated those portions of this Court's order addressing

Defendant's motion for summary judgment on Plaintiff's Fourth Amendment claims and

affirmed on all remaining issues.  Id. at 256-58.  In its order remanding the case, the Court of

Appeals directed this Court to make additional findings of fact regarding the qualified immunity

question.  Id. at 256.  On remand, this Court concluded that outstanding factual disputes

remained that prevented the Court from entering summary judgment.  Kelly v. Borough of

Carlisle (Kelly III), 815 F. Supp. 2d 810, 821 (M.D. Pa. 2011).  Following the Court's order

denying summary judgment, Plaintiff entered a stipulation of voluntary dismissal of all claims

with the exception of Plaintiff's Fourth Amendment claims.  (Doc. No. 71.)  Prior to trial, the

parties stipulated that, in light of the Third Circuit's order, it was clear that a constitutional

violation had taken place.[1]  Accordingly, the parties agreed that trial would focus solely on the

---

[1] The parties also informed the Court that they had reached an agreement as to damages so the entitlement to, and amount of, damages would not need to be presented to the jury.

2

factual questions underlying the question of whether Defendant David Rogers is entitled to qualified immunity.[2]   At trial, both parties moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, which the Court denied.   The parties have each filed renewed motions for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

## II.   FINDINGS OF FACT

At the close of trial, the Court put the following questions to the jury:

1.   Did Defendant David Rogers reasonably believe that Plaintiff Brian Kelly attempted to videotape Defendant Rogers without his knowledge?

2.   Did Defendant David Rogers call Assistant District Attorney Birbeck, at least in part, for the purpose of seeking legal advice regarding whether probable cause existed to arrest Plaintiff Brian Kelly?

3.   Did Assistant District Attorney Birbeck tell Defendant Rogers that probable cause existed to arrest Plaintiff Brian Kelly?

4.   Did Defendant David Rogers tell Assistant District Attorney Birbeck that the police vehicle was recording the stop?

4A.   If Defendant David Rogers did not tell Assistant District Attorney Birbeck that the police vehicle was recording the stop, did Defendant Rogers omit this fact deliberately or recklessly?

(Doc. No. 87.)   In response, the jury found that: (1) Defendant <u>did</u> reasonably believe that Plaintiff was attempting to videotape him without his knowledge; (2) Defendant <u>did</u> call

_____

[2] The sole dispute in this action was whether qualified immunity applied to Defendant's conduct.   Because the Court is not empowered to resolve the factual disputes underlying the qualified immunity determination, and because a jury is not entitled to make the ultimate finding on qualified immunity, the Court determined that a trial solely for the purpose of resolving the disputed questions of fact, followed by the Court resolving the qualified immunity question based on those facts, was the correct procedure.   <u>See</u> <u>Curley v. Klem</u>, 499 F.3d 199, 211 n.12 (3d Cir. 2007); <u>Monteiro v. City of Elizabeth</u>, 436 F.3d 397, 405 (3d Cir. 2005).

Assistant Attorney Birbeck, at least in part, for the purpose of seeking legal advice regarding whether probable cause existed to arrest Plaintiff; (3) Assistant District Attorney Birbeck <u>did</u> tell Defendant that probable cause existed to arrest Plaintiff; (4) Defendant <u>did</u> <u>not</u> tell Assistant District Attorney Birbeck that the police vehicle was recording the stop; but (5) Defendant <u>did</u> <u>not</u> omit the fact that the police vehicle was recording the stop deliberately or recklessly.  (<u>Id.</u>)

These factual disputes having been resolved, the Court will briefly review both the facts as found by the jury and the undisputed facts relevant to the qualified immunity determination. On May 24, 2007, in Carlisle, Pennsylvania, Plaintiff Brian Kelly was riding as a passenger in a truck driven by Tyler Shopp.  (Doc. No. 27 ¶ 1.)  Defendant David Rogers, a police officer for the Carlisle Police Department, initiated a traffic stop of the vehicle.  (<u>Id.</u> ¶ 2.)  Plaintiff, who was carrying a hand-held video camera, turned on the camera and began to record Defendant. (<u>Id.</u> ¶¶ 3-4.)  Near the end of the traffic stop Defendant told Plaintiff and Shopp that the stop was being recorded by a dashboard camera on the police car and a microphone in Defendant's shirt pocket.  (<u>Id.</u> ¶ 6.)  As shown in the videotape of the incident, which was introduced at trial, after Defendant returned to Shopp's truck with a citation, Shopp began to question Defendant regarding how many "points" he would receive for the cited violations.  (Doc. No. 29.)  As Defendant began to answer Shopp's question, he stopped and demanded that Plaintiff cease recording and surrender the video camera.  (<u>Id.</u>)  Plaintiff complied.  (Doc. No. 27 ¶ 8.)

Defendant returned to his police vehicle and called Assistant District Attorney John Birbeck, at least in part, for the purpose of determining whether Plaintiff's actions violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, <u>et</u> <u>seq.</u>, and if so, to receive permission to file the proper charges.  (Doc. No. 84.)  While on the call

4

with ADA Birbeck, Defendant innocently failed to inform ADA Birbeck that the police vehicle

was recording the stop.[3]  (Id.)  Defendant did, however, reasonably believe Plaintiff was

attempting to surreptitiously record him, and ADA Birbeck relied on this fact in making his

charging recommendation.  (Id.; Doc. No. 27 ¶ 15.)   As a result of the call, ADA Birbeck

informed Defendant that probable cause existed to arrest Plaintiff for a violation of the Wiretap

Act.  (Doc. No. 84.)  Defendant then placed Plaintiff under arrest and charged him with a

violation of the Wiretap Act.  (Doc. No. 27 ¶¶ 19, 24, 29.)

## III.   CONCLUSIONS OF LAW

Due to the procedural posture of this matter, many of the legal precepts governing this

action have been previously articulated both by this Court and by the United States Court of

Appeals for the Third Circuit.  See Kelly II, 622 F.3d 248; Kelly III, 815 F. Supp. 2d 810.  To

avoid unwarranted repetition, the Court will refrain from exhaustively revisiting these issues.

For ease of reading, however, the Court will briefly summarize the legal standards that it and the

Third Circuit previously determined govern this matter.  The Court will then apply the facts as

found by the jury to those legal precepts to determine whether, as a matter of law, Defendant is

entitled to qualified immunity regarding the arrest of Plaintiff and the seizure of his camera.

### A.   Qualified Immunity Standard

Qualified immunity is a question of law for the Court to decide and requires the Court to

ask two questions: (1) whether, when considering the facts in the light most favorable to the

---

[3] As has been noted at various stages of this litigation, Defendant did not in fact record
the stop because there was a malfunction with the recording equipment.  The relevant issue for
the qualified immunity analysis, however, is whether Defendant reasonably believed he was
recording the stop, not whether the stop was actually being recorded.

plaintiff, the defendant's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the arrest.  <u>Pearson</u>, 129 S. Ct. at 815-16; <u>Saucier</u>, 533 U.S. at 200-02; <u>Gilles v. Davis</u>, 427 F.3d 197, 205 (3d Cir. 2005).  All parties agree that Defendant's conduct violated Plaintiff's constitutional rights.  The Court will, accordingly, address only the second prong of the qualified immunity analysis.

"The second prong of the qualified immunity analysis is focused upon whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Egolf v. Witmer</u>, 526 F.3d 104, 110 (3d Cir. 2008).  Qualified immunity determinations should take into account the entire episode and allow for cases where officers "reasonably but mistakenly conclude that probable cause to make an arrest is present . . . .  [I]n such cases, those officers . . . will not be held personally liable."  <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995).  Thus, "the qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  <u>Id.</u> at 483; <u>Carswell</u>, 381 F.3d 235.

### B.      Qualified Immunity for Arrest of Plaintiff

On appeal in this matter, the Third Circuit determined that it was clearly established that the conduct for which Defendant arrested Plaintiff was not a crime.  <u>Kelly II</u>, 622 F.3d at 258. The Court of Appeals further observed that "police officers generally have a duty to know the basic elements of the laws they enforce."  <u>Id.</u> (citing <u>Lawrence v. Reed</u>, 406 F.3d 1224, 1234 (10th Cir. 2005); <u>Peterson v. City of Plymouth</u>, 945 F.2d 1416, 1420-21 (8th Cir. 1991); <u>Hall v. Ochs</u>, 817 F.2d 920, 924 (1st Cir. 1987)).  However, the Third Circuit explained that "a police officer who relies in good faith on a  prosecutor's legal opinion that the arrest is warranted under

the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause" provided that reliance is objectively reasonable.[4]  Id. at 255-56.  The Third Circuit further advised that a plaintiff may rebut the presumption by showing that a reasonable officer would not have relied on the prosecutor's advice.  Id. at 256.

Although the Court of Appeals held that actions taken based on good faith and reasonable reliance on a prosecutor's legal advice are entitled to qualified immunity, the Third Circuit did not answer the question of whether a police officer's reliance on a prosecutor's advice could be reasonable where the advice is contrary to clearly established law.  Rather, the Third Circuit held that the elements of the Wiretap Act were clearly established, explained that officers have a duty to know the elements of the laws they enforce, and asked this Court to determine "in the first instance" how "the Pennsylvania Wiretap Act fits into the landscape painted by these precedents."  Id. at 258.  The Court acknowledges that there is a tension between the principle that officers should know the elements of the laws they enforce and a potential finding that reliance on erroneous advice from a prosecutor regarding the elements of an offense could be reasonable.  As explained in its prior order, however, this Court must conclude that a police

_____

[4] In opposing Defendant's motion for judgment as a matter of law, Plaintiff relies on the recent Supreme Court decision in Messerschmidt v. Millender, 132 S.Ct. 1235 (2012), for the proposition that the Third Circuit erred in articulating the standard to be applied to the qualified immunity analysis when an officer relies on the advice of a prosecutor.  Plaintiff's reliance, however, is misplaced.  In Messerschmidt, the Supreme Court expressly rejected the Ninth Circuit's decision to give no weight to the fact that a police officer relied on the advice of a deputy district attorney in determining whether a warrant was supported by probable cause.  Id. at 1249.  The Supreme Court held that "[t]he fact that the officers secured [the approval of an assistant district attorney] is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause."  Id. at 1250; see also L.A. Police Protective League v. Gates, 907 F.2d 879, 888 (9th Cir. 1990) (holding that reasonable reliance on advice of counsel militates in favor of a finding of qualified immunity).

7

officer's reliance on erroneous advice could, under some very limited circumstances, be found reasonable.

In harmonizing these principles, the Court is persuaded by the United States Court of Appeals for the Second Circuit, which held that:

> The statement in Harlow that reasonably competent public officials know clearly established law[] is a legal fiction. Qualified immunity is appropriate in those situations in which the legal fiction does not make sense and applying that fiction would create problems that qualified immunity is intended to avert.

Amore v. Novarro, 624 F.3d 522, 535-36 (2d Cir. 2010) (internal citations omitted) (concluding an officer who arrested an individual for loitering – a crime that had been ruled unconstitutional twenty years prior to the arrest – was entitled to qualified immunity where the officer consulted a copy of the New York penal code prior to the arrest and the code incorrectly indicated that loitering was still a crime); see also Lawrence v. Reed, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting). Accordingly, this Court previously held that "even when the law is clearly established, where an officer acts 'deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law before taking the actions for which the plaintiff [] seeks to hold him accountable,' qualified immunity may still be available." Kelly III, 815 F. Supp. 2d at 817 (quoting Amore, 624 F.3d at 535).

Plaintiff rejects this conclusion and in his brief in opposition demands that "this Court must consider the precedents that the Third Circuit pointed to" in remanding the case. (Doc. No. 99 at 29.) The Court has considered these precedents and determined that while officers generally have a duty to know the laws they enforce, in some limited circumstances reasonable reliance on the advice of a prosecutor may excuse this requirement. See Kelly III, 815 F. Supp.

8

2d at 817 (concluding that "although reliance on a legal opinion that is contrary to clearly

established law will generally be found to be unreasonable or in bad faith, the relative obscurity

of a statute may, in limited cases, support a finding that a police officer's reliance on bad legal

advice is still reasonable and entitled to qualified immunity").   None of the three cases cited by

the Third Circuit are in conflict with this Court's conclusion.   Each of the cases the Third Circuit

identified as part of the "landscape" that this Court must evaluate are distinguishable in that in

each case the police officer did not seek the advice of a prosecutor before taking the challenged

action, the legal principle in question was one with which the average police officer would have a

working familiarity, or both of these distinguishing characteristics were present.[5]   The Court

---

[5] In Hall v. Ochs, 817 F.2d 920 (1st Cir 1987), the First Circuit held that qualified immunity did not apply because a police officer should have known that holding a plaintiff in custody for the purposes of coercing that plaintiff to sign a waiver of his right to sue his captors was a violation of the plaintiff's rights.  Id. at 924-25.  In that case, the officer did not rely on the advice of a prosecutor and the fact that a violation was being committed would have been patently obvious to any reasonably competent officer.  Id.  In Peterson v. Plymouth, 945 F.2d 1416 (8th Cir. 1991), the Eighth Circuit determined that qualified immunity did not apply because a reasonably prudent officer would have known the elements of felony theft.  Id. at 1420-21.  In that case, the police officer arrested based on a statute, felony theft, with which the average police officer should have a working familiarity.  Finally, in Lawrence v. Reed, 406 F.3d 1224 (10th Cir. 2005), the Tenth Circuit determined that the seizure of an automobile pursuant to a derelict vehicle ordinance was not entitled to qualified immunity because the government official seizing the vehicles should have known that seizing property without a warrant or an opportunity for a pre- or post-deprivation hearing violated the plaintiff's right to due process.  Id. at 1231.  Although in that case the public official did seek the advice of the city attorney before seizing the vehicles, the Tenth Circuit found "particularly significant" that the city attorney never discussed the issue of whether the officer could seize the property without a warrant or hearing. Id. at 1231.  The Tenth Circuit further explained that where a consultation with an attorney "so prevented [the official] from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right" qualified immunity could be found.  Id. (quoting Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)); see also V-1 Oil Co. v. Wyoming, Dep't of Env't Quality, 902 F.2d 1482, 1488 (10th Cir. 1990) (holding that "reliance on the advice of counsel in certain circumstances [can] rise[] to the level of extraordinary circumstances" sufficient to justify a grant of qualified immunity").

Plaintiff cites two additional cases: Johnson v. Hawe, 388 F.3d 676, 687 (9th Cir. 2004),

agrees that in the mine run of cases an officer's reliance on legal advice that is contrary to clearly established law will not arise to the level of the "extraordinary" circumstances cited in Harlow v. Fitzgerald, 457 U.S. 800 (1982).  These cases do not, however, suggest that such reliance could not support a finding of qualified immunity as a matter of law.  See, e.g., Lawrence, 406 F.3d at 1230-31 ("In some cases consultation with an attorney can create the extraordinary circumstances that excuse a violation of clearly established law.").

Against this backdrop, the Court must determine whether, as a matter of law, Defendant's reliance on ADA Birbeck's advice was objectively reasonable.  The Court acknowledges the Third Circuit's holding that the elements of the Pennsylvania Wiretap Act were clearly established and that probable cause did not exist to arrest Plaintiff for a violation of the Wiretap Act.  However, the Court is compelled to find that in this matter, based on the facts as determined by the jury, Defendant Rogers is entitled to qualified immunity.

The facts, both undisputed and those found by the jury, establish that Defendant, a "motor carrier traffic enforcement specialist" encountered Plaintiff during a routine traffic stop.  With only a limited familiarity with the Wiretap Act, gained from his training, Defendant believed that Plaintiff violated the Act by recording the traffic stop.  Defendant knew from training that he was obliged to inform motorists if he recorded a stop, so he believed the duty was reciprocal under the Act.  See Commonwealth v. McIvor, 670 A.2d 697, 703-04 (Pa. Super. Ct. 1996) (holding

─────────────────────

and United States v. Lopez-Valdez, 178 F.3d 282, 289 (5th Cir. 1999).  Neither of these cases affect the Court's analysis.  In Johnson, the officer did not consult with an attorney to determine whether probable cause existed to arrest.  In Lopez-Valdez, the police officer did not consult with an attorney, the officer erred regarding a simple traffic violation with which a reasonable police officer should be familiar, and the error was evaluated in the context of whether the exclusionary rule applied to evidence, not whether the police officer was entitled to qualified immunity.

10

that while there is no expectation of privacy in a roadside stop, that a motorist does have an

expectation of non-interception in conversations with police during routine traffic stops, and

suggesting that police likewise had an expectation of non-interception in such situations).  Rather

than rely on his limited knowledge of the Wiretap Act, Defendant called the assistant district

attorney on duty, ADA Birbeck, an experienced prosecutor who had been serving as the chief

deputy district attorney in charge of the trial division for more than a decade, to ask whether

probable cause existed to arrest Plaintiff for a Wiretap Act violation.  The jury found that

Defendant called ADA Birbeck for the purpose of seeking legal advice regarding whether

probable cause existed to arrest Plaintiff for a violation of the Wiretap Act.  Defendant did not

deliberately or recklessly omit any relevant fact, and he told ADA Birbeck the truth as he

reasonably understood it.[6]  Based on this conversation, ADA Birbeck told Defendant that

probable cause existed.  As has been explained by the Third Circuit, the advice given by ADA

Birbeck was contrary to clearly established law.[7]  Kelly II, 622 F.3d at 258.  The advice was,

---

[6] Plaintiff argues in his brief in opposition that the Court should not credit the jury's finding that Defendant Rogers did not deliberately or recklessly omit any relevant facts because the jury was not instructed on the elements of the Wiretap Act.  The Court finds this argument disingenuous at best.  Plaintiff never raised concerns about the jury instructions during trial. Indeed, the Court notes that Plaintiff submitted a total of two pages of proposed jury instructions to the Court, which do not even include a reference to Wiretap Act, let alone a recitation of the elements of a Wiretap Act violation.  Accordingly, this objection is waived.  Inter Med. Supplies, Ltd. v. Ebi Med. Sys., Inc., 181 F.3d 446, 463 (3d Cir. 1999) (finding that failure to object to a jury instruction at the time the jury receives it constitutes waiver of the objection).  In any event, Plaintiff made the jury well aware of why he believed Defendant Rogers's failure to tell ADA Birbeck that he was recording the stop was reckless.  Therefore, the Court is satisfied that the jury made an informed decision on this question.  Accordingly, even if this argument were not waived, the Court would find no merit in it.

[7] Of course, while the law is clearly established, the Court does observe that as recently as 2010, federal courts have cited with approval the Pennsylvania Superior Court's decision in Commonwealth v. McIvor for the proposition that while there is no expectation of privacy at a

however, consistent with Defendant's training and plausible in the absence of a thorough review of the relevant case law and given the time limitations and obvious lack of available legal resources at a roadside traffic stop.[8]

The facts of this case show that Defendant acted precisely as one would hope that a police officer would act when confronted with a violation of a statute with which he could not reasonably be expected to be familiar: He stopped, he sought out a legal authority, he made a good faith reasonable recitation of the facts to that authority, and he reasonably relied on the advice of that authority.  In the face of these facts, the Court cannot find that any purpose would be served by holding Defendant liable for his conduct in effectuating the arrest.  The Court finds that this is one of those rare situations where, in the words of the Second Circuit, "the legal fiction [that public officials know the elements of the laws they enforce] does not make sense." Amore, 624 F.3d at 535-36.  To hold Defendant liable would have little effect beyond "dampen[ing] the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."  Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949); see also Gates, 907 F.2d at 888 ("[T]he employees of LAPD were faced with what can only be called a complex and uncertain legal issue, they sought legal advice and then followed that advice.  It would be counterproductive and even oppressive were we to find that they can now be held liable in damages for their actions.").

---

traffic stop, a police officer conducting a traffic stop does have an expectation of non-interception in his communications at the stop, and thus, such communications would constitute "oral communications" under the Wiretap Act.  Matheny v. Cnty. of Allegheny, No. 09-cv-1070, 2010 WL 1007859, at *9 (W.D. Pa. Mar. 16, 2010) (citing McIvor, 670 A.2d at 704 n.5).

[8] ADA Birbeck testified at trial that he had researched the issue on Defendant Rogers's inquiry and incorrectly concluded that probable cause existed.

The Court does not wish to minimize what Plaintiff experienced. His rights were violated. Being placed under arrest and detained overnight was undoubtedly an unpleasant and frightening event. However, as explained by Judge Learned Hand in Gregoire v. Biddle:

> Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

177 F.2d at 581. Defendant confronted what he believed to be a violation of a statute, which at that time few police officers "on the beat" would ever have had occasion to enforce. A jury found that Defendant made an honest report of the facts to an assistant district attorney and asked whether probable cause existed. The assistant district attorney gave a plausible, yet erroneous, affirmative response. Relying on this advice, Defendant placed Plaintiff under arrest. In light of these findings, the Court is satisfied that Defendant relied in good faith on ADA Birbeck's advice and that the officer's reliance was objectively reasonable.[9] Accordingly, the Court finds that

---

[9] The Court pauses to note the limited applicability of its holding. Although the Court is writing in 2012, this action springs from events that took place in May 2007. In the five years that have passed since the events underlying this litigation occurred, the landscape on which this case rests has shifted dramatically as technology has rapidly advanced. At one time, a police officer's actions would only be recorded on the off chance that a nearby individual happened to be carrying a bulky video recorder. Today, mobile devices with video recording capabilities are ubiquitous. As a result of these devices, which the owner will nearly always have at the ready, a police officer patrolling the streets in 2012 should expect that nearly every interaction he has on a public street may be recorded. A strong argument could be made, therefore, that an officer's failure to understand the contours of the public's right to record his conduct would be objectively

Defendant is entitled to qualified immunity and will enter judgment in his favor for the arrest of

Plaintiff.

### C.    Qualified Immunity for Seizure of Camera

The Court of Appeals in this matter previously held that:

> [A]t the time of [Plaintiff]'s arrest, it was clearly established that a
> reasonable expectation of privacy was a prerequisite for a Wiretap
> Act violation. Even more to the point, two Pennsylvania Supreme
> Court cases – one almost 20 years old at the time of [Plaintiff]'s arrest
> – had held that covertly recording police officers was not a violation
> of the Act. Finally, it was also clearly established that police officers
> do not have a reasonable expectation of privacy when recording
> conversations with suspects.

Kelly II, 622 F.3d at 258. Defendant Rogers does not raise any arguments in support of qualified

immunity for the seizure of Plaintiff's video camera during the few seconds between the time the

camera was seized and the time Defendant Rogers called ADA Birbeck to determine whether a

violation of the Wiretap Act took place. Because the Third Circuit has determined that, as a

matter of law, the facts did not support a violation of the Wiretap Act the Court cannot find that

Defendant Rogers had a reasonable basis to seize the camera, even though he contended that he

had done so to ensure that Plaintiff did not erase evidence of the purported crime.[10]  Accordingly,

---

unreasonable in 2012. Accordingly, the Court is unprepared to say that if the events giving rise
to this suit took place in May 2012 rather than May 2007, that the Court would excuse
Defendant's erroneous reliance on ADA Birbeck's advice. That question is not, however, before
the Court.

[10] The Supreme Court has counseled that "[t]here is, of course, a de minimis level of
imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651,
674 (1977); see also United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005) ("Of
trifles the law does not concern itself: De minimis non curat lex."); Ford v. Wilson, 90 F.3d 245,
248 (7th Cir. 1996) (Posner, J.) (outlining the contours of de minimis intrusions that do not
violate the Fourth Amendment). An argument may be made that the few seconds Plaintiff was
deprived of his camera prior to Defendant Rogers calling ADA Birbeck does not rise to the level

the Court is constrained to enter judgment as a matter of law in favor of Plaintiff for Defendant

Rogers's seizure of Plaintiff's camera prior to Defendant Rogers calling ADA Birbeck.  For the

reasons stated more fully above, the Court finds that Defendant Rogers is entitled to qualified

immunity for his actions in holding the camera after calling ADA Birbeck.

---

of a Fourth Amendment violation.  See Porter v. Jewell, 453 F. App'x 934, 937 (11th Cir. 2012)
(holding that a temporary deprivation of the plaintiff's possessory interests did not arise to the
level of a "seizure" within the meaning of the Fourth Amendment).  Defendant Rogers has not,
however, made such an argument, and the Court declines to make such a determination sua
sponte.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN D. KELLY,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:07-cv-1573** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DAVID J. ROGERS,** | : | |
| **Defendant** | : | |

**<u>ORDER</u>**

**AND NOW**, on this 13th day of June 2012, **IT IS HEREBY ORDERED THAT**

Defendant's motion for judgment as a matter of law (Doc. No. 93) and Plaintiff's motion for

judgment as a matter of law (Doc. No. 97) are **GRANTED IN PART AND DENIED IN PART**

as follows:

1.  Defendant's motion for judgment as a matter of law is **GRANTED** as to
    Plaintiff's Fourth Amendment claim against Defendant for the arrest of Plaintiff,
    and the Clerk of Court is directed to enter judgment in favor of Defendant on this
    claim;

2.  Plaintiff's motion for judgment as a matter of law is **GRANTED** as to Plaintiff's
    Fourth Amendment claim against Defendant for the seizure of Plaintiff's video
    camera prior to Defendant calling ADA Birbeck, and the Clerk of Court is
    directed to enter judgment in favor of Plaintiff on this claim;

3.  The motions for judgment as a matter of law are **DENIED** in all other respects.

  S/ Yvette Kane

Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
